IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-675-FL

| | | |
|---|---|---|
| SHIRLEY EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TWC ADMINISTRATION LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for partial summary judgment (DE 27) and defendant's motion for summary judgment (DE 36). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court denies plaintiff's motion and grants defendant's motion.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on December 30, 2015, alleging defendant failed to select her for promotion on the basis of her race, color, gender, and age and asserting claims of race, color, and sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 ("§ 1981"); age discrimination under the Age Discrimination in Employment Act, as amended, 29

U.S.C. § 621 et seq. ("ADEA"); and claims under the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2 ("NCEEPA").[1]

On May 19, 2017, Plaintiff filed the instant motion for partial summary judgment as to her failure to hire/promote claims under Title VII, § 1981, and the ADEA. In support of the motion, plaintiff filed a memorandum of law, statement of material facts, and appendix of exhibits comprising the following: 1) plaintiff's first affidavit; 2) work and performance-related items consisting of plaintiff's performance appraisals, personnel file, performance awards, emails requesting plaintiff's work-related assistance, and training transcript; 3) defendant's organizational chart; 4) items related to the position at issue consisting of defendant's position announcement, plaintiff's resume and job application, Joseph Holliday's ("Holliday") resume and job application, defendant's candidate file, Jan Clayton-Miller's ("Clayton-Miller") candidate file of resumes, and Clayton-Miller's ratings of plaintiff and Holliday's applications; 5) defendant's work-progression memo; 6) defendants internal investigation file concerning plaintiff's claims; and 7) excerpts from depositions of Linda Smith ("Smith"), plaintiff, Clayton-Miller, and Holliday.

Also on May 19, 2017, defendant filed the instant cross-motion for summary judgment, directed against all of plaintiff's claims, including memorandum of law, statement of material facts, and appendix consisting of the following: 1) Carrie Uhl ("Uhl") affidavit; and 2) excerpts and exhibits from the depositions of plaintiff, Clayton-Miller, and Smith.[2]

---

[1] Plaintiff additionally asserted the following claims which she has subsequently abandoned: claims of harassment under Title VII and § 1981 and pay discrimination under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C. § 201 et seq., as amended by the Equal Pay Act, 77 Stat. 56, 29 U.S.C. § 206(d) ("EPA").

[2] Both parties filed responses to the other parties' statement of material facts, and in conjunction plaintiff filed an additional appendix consisting of plaintiff's second affidavit and additional excerpts from Clayton-Miller's deposition. Additionally, plaintiff attached plaintiff's third affidavit to plaintiff's reply to response to plaintiff's motion for partial summary judgment. Each subsequent affidavit filed by plaintiff added to the information already contained in her previously filed affidavit(s).

2

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts may be summarized as follows. Plaintiff is an African-American female over 40 years of age and is currently employed by defendant, a wired telecommunications carrier, and has been employed by defendant since February 29, 1988. Plaintiff was promoted to her current position, now known as lead construction coordinator, in 2009. Before Clayton-Miller hired Holliday, Clayton-Miller was plaintiff's immediate supervisor. Plaintiff was one of 13 construction coordinators reporting to Clayton-Miller. Plaintiff performed her job satisfactorily and received performance ratings of "exceeds expectations" and "successfully meet expectations," with no negative reviews.

In 2014, defendant posted a position announcement for a construction supervisor for Clayton-Miller's team. The announcement included among others the following requirements:

-Computer proficiency and advanced skills in Access, Word, Excel, Visio, MS Project, MS PowerPoint and other required systems.
-Knowledge of project management, project budgeting, and project feasibility and analysis required.
-Strong analytical skills.
-One to three years leadership experience.

(Position Announcement (DE 32-3) at 2).

Out of 26 applicants, Clayton-Miller interviewed six individuals, including plaintiff and two other construction coordinators, both of whom are white males, as well as external candidates. External candidate Holliday, who is a white male and younger than plaintiff, was chosen for the position.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2014, alleging race, color, sex, and age discrimination with regard to her non-selection for the construction supervisor position as well as harassment and

violation of the EPA. On October 15, 2015, the EEOC issued a "no cause" dismissal and notice of rights. Plaintiff commenced this timely action following the EEOC's dismissal of plaintiff's charge of discrimination.

## DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see

4

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

    1.  Title VII, § 1981, and ADEA Claims

To prevail on a disparate treatment claim for failure to promote, plaintiff must establish that she was treated less favorably because of her race, color, age, or gender. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005) (analyzing failure to promote claim due to race discrimination under Title VII and § 1981); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (analyzing failure to promote claim due to sex discrimination under Title VII); Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998) (analyzing failure to promote claim due to age and race discrimination under Title VII and the ADEA). The elements of a prima facie case under Title VII, § 1981, and the ADEA are the same. See Williams v. Giant Food Inc.,

5

370 F.3d 423, 430 n. 5 (4th Cir. 2004) ("The same elements are required for failure-to-promote claims alleged under Title VII and § 1981."); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (holding elements of a prima facie case under the ADEA and Title VII are the same). Here, in order to establish a prima facie case based on race, color, age, or gender discrimination in promotions under Title VII, § 1981, and the ADEA, plaintiff follows the burden-shifting framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Anderson, 406 F. 3d at 268; Evans, 80 F.3d at 959; Causey, 162 F.3d at 800-01.[3]

Under the McDonnell Douglas framework, plaintiff can establish a prima facie case by showing that 1) she is a member of a protected group; 2) she applied for the position in question; 3) she was qualified for that position; and 4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination. See McDonnell Douglas Corp., 411 U.S. at 802; Anderson, 406 F. 3d at 268.

Although defendant disputes the second and fourth criteria, the court assumes arguendo that plaintiff has established a prima facie case of racial discrimination. "If a prima facie case is established, the burden then shifts 'to the employer to articulate some legitimate, nondiscriminatory reason' for the decision not to promote." Anderson, 406 F.3d at 268 (citing McDonnell Douglas, 411 U.S. at 802)). "After the employer states a reason for its decision, [plaintiff] has the opportunity to show that the stated reason is a pretext for discrimination . . . and the trier of fact must determine

---

[3] Plaintiff states that she will prove her case using indirect evidence. (Pl.'s Mem. (DE 34) at 23); see Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011) ("Adams satisfies this burden at the summary judgment stage if he establishes that his job performance was satisfactory and provides direct or indirect evidence whose cumulative probative force supports a reasonable inference that the employment decision was discriminatory.") (interior citations omitted).

6

if the plaintiff has proved that the employer intentionally discriminated against her . . . ." Id. (interior citations omitted).

Defendant's offered legitimate, nondiscriminatory reason for failing to promote plaintiff is that Clayton-Miller, who made the hiring decision at issue, "appropriately believed that [Holliday] was the most qualified candidate and selected him for the job." (Def.'s Mem. (DE 37) at 8). In making her decision to not promote plaintiff and hire Holliday, Clayton-Miller ranked plaintiff in the interview process as having a level 3 (solid) or level 4 (excellent) rating in all areas except decision making, giving plaintiff a level 2 (gap) rating, and an overall rating of level 3. (Pl. Rating (DE 33-5)). Clayton-Miller ranked Holliday as having a level 4 or level 5 (outstanding) rating in all areas, with an overall rating of level 5. (Holliday Rating (DE 33-6)). Additionally, Holliday has over 30 years experience in the telecommunication and cable business, worked for at least four of defendant's competitors in various capacities, has advanced computer skills, and had managed an entire facility as plant manager. (Holliday Resume (DE 32-4); Def.'s Mem. (DE 37) at 8). Although the parties dispute whether or not plaintiff had been given managerial duties in her current position, there is no dispute that Holliday has significantly more managerial experience than plaintiff and that plaintiff has only sufficient computer skills, particularly in Excel, for her current position and not the advanced computer skills defendant asserts is required by the position. (See, e.g., Pl.'s Mem. (DE 34) at 8 (plaintiff admitting Holliday's resume "looks impressive" and stating that Holliday was "'more qualified' in areas that had nothing to do with the position," arguing advanced excel skills are unnecessary for the position); Pl's Dep. (DE 35-2) at 93 (plaintiff stating "the only reason I say overqualified is because he held the senior manager's position at one point")).

7

The burden therefore shifts back to plaintiff to show pretext, and the court holds that she has failed to raise a genuine issue of material fact that defendant's explanation is pretextual. "A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Adams, 640 F.3d at 559 (citing Heiko v. Colombo Sav. Bank, 434 F.3d 249, 259 (4th Cir. 2006)). Plaintiff has not shown she is better qualified than Holliday nor amassed evidence that undermines the credibility of defendant's stated reasons.

Plaintiff directs the court's attention to the many years she has worked for defendant, the consistently positive reviews and awards she has received, and various training courses she has completed, but this does not show that she was better qualified than Holliday for the position in question, only that plaintiff has performed extremely well in her current position, which no party disputes. (See Pl.'s Third Aff. (DE 3) at 3-4 (quoting positive work evaluations)). Plaintiff's main argument in both her motion for partial summary judgment and in her response to defendant's motion for summary judgment is the skills and experience defendant asserts were the basis of Clayton-Miller's hiring decision, particularly advanced Excel skills, are not in fact necessary for the position. (See Pl.'s Mem. (DE 34) at 31 ("the only Excel skills necessary for the position was filling numbers into cells that were preformatted and often locked"); see also Pl.'s Third Aff. (DE 3) at 6 ("I refuse to believe it had anything to do with Excel"); Pl.'s Resp. (DE 43) at 6 ("Holliday, on the other hand was allegedly hired solely for his alleged high abilities with Excel, a simple computer program; abilities that were not required as the reporting forms in Excel were pre-developed outside the team . . . . None of the managerial requirements stated in the job announcement were relevant to the actual position.")).

8

However, plaintiff cannot establish her own criteria for judging her qualifications for promotion. See Anderson, 406 F.3d at 269 (plaintiff "must compete for the promotion based on the qualifications established by her employer"); Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997) ("[A]bsent evidence of retaliatory motive, we leave to the employer's discretion the method of evaluating an employee's job performance."); see also Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir.1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment.").[4]

Importantly, in demonstrating the defendant's decision was pretext, plaintiff must prove "both that the reason was false, and that discrimination was the real reason," Adams, 640 F.3d at 560 (citing Jiminez, 57 F.3d at 378), and cannot rely on her "own assertions of discrimination[, which] in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action," id. (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir.1989). See Vaughan, 145 F.3d at 200-203 (holding material issue of fact existed as to credibility of employer's proffered reason for employee's dismissal but granting summary judgment to employer on ADEA claim because employee failed to establish that discrimination was real reason for her discharge). Plaintiff provides no evidence that connects Clayton-Miller's hiring decision to any discriminatory intent other than plaintiff's own subjective belief that because she received positive performance reviews and personally felt she was being groomed for the position

---

[4] Additionally, plaintiff does not dispute that Holliday was qualified for the position but argues that she was a better candidate because she had been performing parts of the desired position. (See Pl.'s Dep. (DE 39-2) at 27 ("I'm not saying he doesn't have qualification to do the job, what I'm saying is that I am also qualified to do the job because . . . I was doing parts of the job.")). These assertions are insufficient for the court to find defendant's decision was pretext. See Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001) (finding no evidence of pretext for failing to promote plaintiff who, despite serving as interim manager, had not performed many key management functions of the position); see also Vaughan v. Metrahealth Companies, Inc., 145 F.3d 197, 202 (4th Cir. 1998) ("Standing alone, self-serving claims of superiority do not suffice.").

9

in question, no other reasonable explanation exists for why she was not promoted other than discrimination.[5]

Additionally, plaintiff's evidence, without more, that "[t]o date there is no person of color in a management position in the Morrisville Construction department" is insufficient to save either her failure to promote claims or any other potential discrimination claim. (Pl.'s Mem. (DE 34) at 10). Although not wholly clear, plaintiff appears to be referencing, at most, six management positions and offers no additional evidence about the racial composition of the qualified population in the relevant labor market that could make this evidence potentially actionable. (See Org. Chart (DE 32-2) at 2). The Fourth Circuit has held that although statistics can provide "important proof of employment discrimination" and may be used to "establish an inference of discrimination as an element of plaintiff's prima facie case . . . or to demonstrate that an employer's stated nondiscriminatory reason for its action is in reality a pretext," the proper inquiry in a case of discrimination in hiring or promoting is a comparison between "the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool." Carter v. Ball, 33 F.3d 450, 456 (4th Cir. 1994). The court also held that "[t]he mere absence of minority employees in upper-level positions does not suffice to prove a prima facie case of discrimination without a comparison to the relevant labor pool." Id.; see also Vaughan, 145 F.3d at 203

---

[5] Plaintiff admitted that neither Clayton-Miller nor Smith, Clayton-Miller's supervisor, ever made comments about her race, color, age, or gender or otherwise exhibited a bias toward her because of her race, color, age, or gender. (Pl.'s Dep. (DE 35-2) at 102-103).

("Vaughan's 'statistics' are particularly unhelpful, as they are drawn from a sample of seven employees, which is too small for reliable analysis.").[6]

Because plaintiff has failed to offer any evidence to show that defendant's legitimate, non-discriminatory reason for its selection of Holliday over plaintiff was pretext for intentional discrimination, her failure to promote claims fail as a matter of law. See Hux v. City of Newport News, Va., 451 F.3d 311, 314 (4th Cir. 2006) (upholding summary judgment for defendant and explaining that defendant met its burden by providing evidence that it did not promote plaintiff because other "candidates were better qualified."). Therefore, defendant's motion for summary judgment as to plaintiff's Title VII, § 1981, and ADEA claims is GRANTED, and plaintiff's motion for partial summary judgment as to the same claims is DENIED.

2. NCEEPA Claim

Plaintiff generally asserts in her complaint that she is also making claims under "the common law and public policy of the State of North Carolina" but does not incorporate such claims in the standalone claim for relief and only specifically cites to the North Carolina Equal Employment Practices Act, N.C. Gen. Stat.§ 143-422.2, ("NCEEPA"). (See Compl. (DE 1)).

However, under this statute, North Carolina has not acknowledged a common law private cause of action or discrimination without termination of employment. See Abels v. Renfro Corp., 335 N.C. 209, 218 (1993) (applying NCEEPA to wrongful discharge claim pursuant to repealed

[6] Finally, plaintiff's argument that Clayton-Miller's lack of inquiry into the reliability of Holliday's resume provides an inference of discrimination and pretext is rejected. (See Pl.'s Mem. (DE 34) at 8 ("the fact remains that initial decision-maker Clayton-Miller took no steps to confirm his resume, employment history, references, etc. . . . Holliday was 'let go' from his previous position and was without work for a year. . . . Clayton-Miller and Smith did not inquire in any detail during the interview or ask HR regarding prior reference checks"). The court will not engage in this type of post-hoc analysis and resume evaluation, sitting in the shoes of the first reviewer of resumes. See Dejarnette v. Corning, Inc.,133 F.3d 293, 299 (4th Cir.1998) (quotations omitted) ("this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination").

worker's compensation statute); see Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000) ("Neither the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA. Instead, most courts have applied the NCEEPA only to common law wrongful discharge claims or in connection with other specific statutory remedies."). The Fourth Circuit has made clear that "absent a clear indication from the courts or legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA . . . ." Id. (citation omitted).

Therefore, defendant's motion for summary judgment as to plaintiff's claims based on North Carolina law is GRANTED.

## CONCLUSION

Based on the forgoing, plaintiff's motion for partial summary judgment (DE 27) is DENIED, and defendant's motion for summary judgment (DE 36) is GRANTED. The clerk is DIRECTED to close the case.

SO ORDERED, this the 2nd day of November, 2017.

LOUISE W. FLANAGAN
United States District Judge